RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0437p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

N.E., as biological father of E.D.L., a minor,
                                                *Plaintiff-Appellant,*

                        *v.*

CINDY J. HEDGES, BRIAN HEDGES, and JAMES C. MONK,
in his official capacity as county attorney for Carroll
County,

                                        *Defendants-Appellees.*

Nos. 03-6680; 04-5156

>

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 03-00020—Joseph M. Hood, District Judge.

Submitted: December 10, 2004

Decided and Filed: December 20, 2004

Before: MERRITT, GIBBONS, and ROGERS, Circuit Judges.

---

### COUNSEL

**ON BRIEF:** Neal F. Eggeson, Jr., Carmel, Indiana, for Appellant. Sandra Mendez Dawahare, DAWAHARE & KERSHAW, Lexington, Kentucky, for Appellee. D. Brent Irvin, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellees.

---

### OPINION

---

MERRITT, Circuit Judge. Plaintiff-appellant, a lawyer, brings his own *pro se* action and appeal against the mother of his child born out of wedlock and her husband, the stepfather of the child. He also sues James Monk, the county attorney of Carroll County, Kentucky, in his official capacity. The theory of the action is that the Kentucky statutes requiring a natural father to pay child support for his son born out of wedlock, as enforced in the state courts in this case by Monk,[1] violate the substantive due process

---

[1] Ky. Rev. Stat. § 406.021 provides the county attorney with the authority to file paternity actions in the district courts of Kentucky seeking to enforce child support obligations established by the Kentucky Cabinet for Families and Children under § 405.430(4) of Kentucky law. These state paternity and child support actions are encouraged and supported by the original Child Support Enforcement Act, 42 U.S.C. §§ 651-669, an act interpreted and explained in *Blessing v. Freestone*, 520 U.S. 329, 333-34 (1997) ( "But the state [under the federal law] must do more than simply collect overdue support payments; it must also establish

protections of the Fourteenth Amendment.  The Kentucky courts have ordered plaintiff to pay $851 per month in child support.  The District Court dismissed plaintiff's complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure and awarded costs and attorneys fees to defendants under 42 U.S.C. § 1988.  The essential holding of District Judge Hood was stated as follows:

> Plaintiff has identified no action taken by a state actor that impacted in any way his choice to father a child.  As he complains of actions taken under the Commonwealth's statutes that permit the establishment of paternity and the imposition and enforcement of child support obligations, the Court sees no evidence that the state required him to engage in the sexual activity that resulted in the conception of his son.  Further he has identified no action taken by a state actor that interfered in any way with his choice to use or not to use contraceptive methods—or additional contraceptive methods, as the case may be—during sexual activity to avoid his sexual partner's resulting pregnancy.  Accordingly, he cannot state a claim for a violation of his substantive rights under the Fourteenth Amendment by the application of the laws of Kentucky for establishing paternity and imposing and enforcing child support obligations.

JA 81-82.

Although plaintiff sought money damages of $1 million and injunctive relief requiring the stepfather to adopt the child and various other forms of relief in his original complaint, he limits his appeal to a claim for injunctive relief based on a declaration that Kentucky paternity and child support laws are invalid.  He also seeks an order enjoining Monk from enforcing child support orders entered in his case in Kentucky courts.  The parties have filed extensive briefs but waived oral argument.

Plaintiff makes a kind of "fairness" or "reciprocity" argument.  His basic claim is that the mother of the child "fraudulently induced" sexual intercourse, claiming that her birth control pills would prevent pregnancy, then left the state, married another man, and delayed seeking child support for several years after birth.  The plaintiff argues that the Kentucky paternity and child support laws are inconsistent with sexual and procreative "privacy" rights recognized by the Supreme Court, *e.g.*, *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Roe v. Wade*, 410 U.S. 113 (1973); *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52 (1976); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992).  The right to procreative privacy, he argues, "includes the right to decide not to become a parent even after conception," and "must extend to both biological parents," so that "Kentucky's statutory scheme" must be invalidated because it "imposes parenthood on biological fathers while denying them any right or opportunity to decide not to become a parent after conception." (Appellant's Reply Brief, p. 3.)[2]  His

---

a comprehensive system to establish paternity, locate absent parents, and help families obtain support orders.")

[2]Plaintiff's argument is succinctly stated at p. 6 of his reply brief as follows:

> [I]t is disingenuous to pretend that imposing a child support obligation is separate and distinct from forcing fatherhood on an unwilling male.  Even if Kentucky eliminated all child support obligations tomorrow, its paternity laws would remain unconstitutional.  It is the fact that Kentucky forced N.E. [plaintiff] to participate in paternity proceedings which proved his fatherhood that renders the statutory scheme unconstitutional.  No one disputes that providing for the financial well-being of out-of-wedlock children is important, but Kentucky does not arrest random individuals off the streets and require each of them to financially support wards of the state; rather, Kentucky reserves that burden for those men it has forced to become fathers.  The ONLY reason N.E. is forced to financially support minor E.D.L. is because of the finding of paternity.  It was unconstitutional for Kentucky to force parenthood on N.E.  Because the support obligation necessarily follows from the forced fatherhood, it is therefore unconstitutional for Kentucky to impose a child support order on N.E.; the issues are inextricably intertwined.

This argument appears to be based on arguments for new state legislation in a law review article, Melanie McCulley, *The Male Abortion: The Putative Father's Right to Terminate His Interests in and Obligations to the Unborn Child*, 7 J.L. & POL'Y

"fairness" argument seems to be that he should receive this constitutional right in exchange for the woman's right to abort her pregnancy.

State requirements, and federal encouragement, of child support from unwed fathers has a long historical tradition. It emanates necessarily from the biological relationship, a relationship that may have only marginal importance for the male in some cases like the one before us in which the father seeks to remove himself completely from the child. Courts have never found that legal classifications based on this biological relationship of fathers and their children were subject to a high level of scrutiny. *See Parham v. Hughes*, 441 U.S. 347, 355-57 (1979) (upholding wrongful death statute granting cause of action only to unwed mothers, not unwed fathers, and imposing low level of scrutiny); *Rivera v. Minnich*, 483 U.S. 574, 580 (1987) ("putative father has no legitimate right and certainly no liberty interest in avoiding financial obligations to his natural child that are validly imposed by state law"); *Developments in the Law — The Constitution and the Family*, 93 HARV. L. REV. 1156, 1270-83 (1980). The paternity requirement emanates primarily from the state's power to intervene under the parens patriae doctrine, a doctrine that enforces the duties of biological parents, not their constitutional rights.[3] The parens patriae authority was granted by the English sovereign to the chancery courts to act as "general guardians of all infants," 3 William Blackstone, Commentaries *47. Under this doctrine, the children's welfare rather than the parents' rights became the most important factor, *Developments in the Law — The Constitution and the Family*, *supra*, at 1221. American courts have generally recognized the doctrine and regarded as an important interest the fact that "the State is entitled to adjust its legal system to account for children's vulnerability . . . ." *Bellotti v. Baird*, 443 U.S. 622, 635 (1979).

As the plaintiff concedes, there are no judicial decisions recognizing a constitutional right of a man to terminate his duties of support under state law for a child that he has fathered, no matter how removed he may be emotionally from the child. Child support has long been a tax fathers have had to pay in Western civilization. For reasons of child welfare and social utility, if not for moral reasons, the biological relationship between a father and his offspring — even if unwanted and unacknowledged — remains constitutionally sufficient to support paternity tests and child support requirements. We do not have a system of government like ancient Sparta where male children are taken over early in their lives by the state for military service. The biological parents remain responsible for their welfare. One of the ways the state enforces this duty is through paternity laws. This responsibility is not growing weaker in our body politic, as plaintiff seems to suggest, but stronger as the passage of the Child Support Recovery Act of 1992, Pub. L. No. 102-521, the Deadbeat Parents Punishment Act of 1998, Pub. L. No. 105-187, and the Child Support Performance and Incentive Act of 1998, Pub. L. No. 105-200, would indicate. The sexual privacy cases referred to by plaintiff do not give either biological parent the right to escape responsibility after the child is born. Neither the laws of biological reproduction nor the Due Process Clause recognize the "fairness" arguments plaintiff raises. Reproduction and child support requirements occur without regard to the male's wishes or his emotional attachment to his offspring.

With respect to the District Court's award of costs and attorneys fees in civil rights cases under 42 U.S.C. § 1988 (court may award attorney's fees to the "prevailing party" in "its discretion"), the appropriate standard provides that the court may award such fees to a defendant if "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994). In the present case, the facts are not in dispute. The

---

1 (1998).

[3] The historical parens patriae power discussed here should not be confused with its generic modern relative, the parens patriae civil action, a type of action not necessarily related to either parents or children. Used in the modern sense, parens patriae is "[a] doctrine by which a government has standing to prosecute a lawsuit on behalf of a citizen . . . ." BLACK'S LAW DICTIONARY 1137 (7th ed. 1999). For example, under section 4c of the Clayton Act, "[a]ny attorney general of a State may bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such State . . . for injury sustained by such natural persons to their property by reason of any violation of section 1 to 7 of this title." 15 U.S.C. § 15c (2000).

plaintiff presents simply a novel legal theory, a theory that would invalidate the paternity and child support laws of the fifty states and the federal acts on child support. The theory is that unwed fathers, as a matter of reciprocity, should also be given the choice to deny any financial responsibility for the child's existence. It is a theory so foreign to our legal tradition that it has no "foundation," no chance of success. We cannot imagine that any federal court would agree with plaintiff's principle that the concept of "procreative privacy" should be stretched to include the constitutional right for a father to receive the constitutional equivalent of the termination of the mother's pregnancy by allowing him the right to deny paternity and deny the duty of financial support. The District Court therefore did not abuse its authority to award fees under § 1988.

Accordingly, the judgment of the District Court is AFFIRMED.